UNITED STATES of America,
Plaintiff-Appellee,

v.

Vincent D. HANSEN,
Defendant-Appellant.

No. 82–1699.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1982.
Decided March 2, 1983.

Frank J. Gray, Gray & Assoc., Fort Wayne, Ind., for defendant-appellant.

David H. Miller, Asst. U.S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and HOFFMAN,* Senior District Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

This is an appeal by defendant-appellant Vincent Hansen of his conviction on five counts of misapplication of bank funds in violation of 18 U.S.C. § 656. Hansen argues as grounds for reversal that the district court improperly refused to tender certain jury instructions concerning requisite intent, that there existed a fatal variance between the indictment and proof at trial, that there was insufficient evidence to support a conviction, that the trial court erroneously refused to provide to him certain putatively exculpatory materials in possession of the government, and that the court erroneously admitted a pre-arrest taped conversation between himself and a co-defendant witness. Finding no cognizable error, we affirm.

---

* The Honorable Walter E. Hoffman, United States Senior District Judge for the Eastern District of Virginia, is sitting by designation.

## I.

The facts below were largely undisputed, and the trial mainly centered on the question of Hansen's intent. The evidence showed that in 1979, Hansen, while an employee and before becoming Vice-President of the Allen County State Bank (whose name was later changed to Allen County Bank and Trust), had arranged several business loans from the Bank for his co-defendant, Robert Moeckel, even though the latter had already exceeded his $10,000 borrowing limit. Hansen circumvented this limit by arranging the loans in the names of some of Moeckel's relatives who neither authorized nor were even aware of the use of their names. Simultaneously, Hansen himself began to experience an increased need for cash as a result of a series of personal asset acquisitions including a home purchase, purchase of a quarter interest in the Bank, and the assumption of debt to finance these acquisitions, all of which left Hansen obligated annually for an amount in excess of his yearly income for debt service alone.

Consequently, while serving as Vice-President of the Bank, Hansen conceived and executed in 1980 a scheme of loans to and kickbacks from Moeckel, the series of activities which forms the subject matter of this case. Pursuant to this scheme, Hansen again caused loans to be made to Moeckel in the names of some of Moeckel's relatives and others, none of whom were aware of the use of their names and none of whom received any of the loan proceeds. Moeckel fraudulently signed each of these names to the respective notes with Hansen's knowledge. A portion of the proceeds of these loans was in turn kicked back to Hansen in line with the previous agreement of the co-defendants.

In 1981, Hansen endeavored to get Moeckel and the other fraudulently named loan recipients to execute affidavits disclaiming Hansen's involvement with this scheme. Moeckel signed one such affidavit, but shortly thereafter contacted the FBI

and narrated the above events. During the ensuing FBI investigation, Hansen took part in a recorded conversation with Moeckel, the tape of which was introduced into evidence over Hansen's objection.

## II.

### A. *Jury Instructions*

■ Hansen first argues that the trial court erred in refusing to tender two of his jury instructions concerning the proof of intent necessary to support a conviction under 18 U.S.C. § 656. That section reads in pertinent part: "Whoever, being an officer ... of ... any ... insured bank ... willfully misapplies any of the moneys, funds or credits of such bank ... shall be fined not more than $5,000 or imprisoned not more than five years or both...." The intent to defraud required to support liability under this section is minimal; it "exists whenever the defendant acts knowingly and the result of his conduct would be to injure or defraud the bank, *regardless of his motive* .... Reckless disregard of the interests of the bank is equivalent to intent to injure or defraud." *United States v. Schoenhut,* 576 F.2d 1010, 1024 (3d Cir.), *cert. denied,* 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 421 (1978) (emphasis added). Furthermore, whether the Bank actually suffered a loss is immaterial to a Section 656 charge. *United States v. Tokoph,* 514 F.2d 597, 604 (10th Cir.1975).

■ We take note that in reviewing the adequacy of jury instructions, they are to be construed in their entirety and not judged in artificial isolation. *United States v. Baskes,* 649 F.2d 471, 479 (7th Cir.1980). Moreover, it is unnecessary to give a proposed instruction where the essential points are covered in another instruction. *United States v. Cina,* 699 F.2d 853 at 863–864 (7th Cir.1983); *United States v. Kirby,* 587 F.2d 876, 883 (7th Cir.1978). We find that the refusal of the proferred instructions here did not in any way truncate the presentation of the defendant's theory of the case.

■ The first refused instruction stated, "Intent to injure or deceive is an essential element of the offense of misapplication of bank funds and knowledge of violation of bank's [sic] internal rule is not sufficient." Hansen argues that the excision of this instruction harmed his defense by leaving open the possibility that the jury could reason that requisite intent to injure or defraud could be inferred merely from Hansen's violation of the Bank's internal lending limits *vis a vis* Moeckel, an inference which is impermissible under such cases as *United States v. Docherty,* 468 F.2d 989, 992, 993 (2d Cir.1972). This is a most curious objection, since the government's theory of the case and the evidence focussed entirely on the fraudulent use of straw names and the conversion of the funds to Hansen's personal use, not the violation of any of the Bank's lending limits. Moreover, an examination of the entire set of jury instructions makes clear that the jury was adequately admonished that no technical rule violation could serve as a basis for liability without independent evidence of unlawful intent:

> To "misapply" a bank's money or property means a willful conversion or taking by a bank employee of such money or property to his own use and benefit, or the use and benefit of another, whether or not such money or property has been entrusted to his care, and with intent to defraud the bank.

> . . . .

> Intent to defraud a bank exists if the officer or employee acts knowingly and if the natural result of his conduct would be to injure and defraud the bank, even though that may not have been his motive.

> . . . .

> The only way you have of arriving at the intent of the defendant in this case is for you to take into consideration all of the facts and circumstances shown by the evidence and determine from all such facts and circumstances what the intent of the defendant was at the time or times in question.

. . . .

Bank funds are not criminally misapplied merely because they are applied in a manner unauthorized or prohibited by federal banking statutes.

It is clear, then, that the requirement of intent was fully stated to the jury, especially in view of Hansen's concession on appeal that he had underscored his argument at trial that technical rule violation was an insufficient basis for liability. Inclusion of the defendant's proposed instruction would have been to "merely restate the detailed knowledge and intent requirement spelled out by the trial court." *United States v. Cina,* 699 F.2d at 863.

■ Defendant's second proposed instruction read, "Mere knowledge that another is the intended beneficiary of a loan does not render the loan a misapplication of funds. Nor does the fact that the officer processing the loan received a gratuity in connection with the loan necessarily make the loan a misapplication of funds." Hansen argues that the omission of this instruction allowed the jury to infer liability from the fact that Moeckel received the loan proceeds or that Hansen received money from Moeckel, an inference which Hansen argues is impermissible under such cases as *United States v. Schoenhut,* 576 F.2d 1010, 1024 (3d Cir.), *cert. denied,* 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 421 (1978). That case, however, is inapposite, for it involved "nothing more than inaction by the defendant in allowing the transfer of funds," *id.* at 1025; hence, a special cautionary instruction was necessary to underscore the need to prove a *passive* defendant's knowledge of the fraud of the perpetrator. Here, by contrast, the government maintained that Hansen, the perpetrator, knew more than that another party received the loan; Hansen himself devised the underlying misrepresentations and converted part of the funds to his benefit. In short, this was a case "in which the Bank officers knew that the named debtor was fictitious or that the named debtor was aware of the use of his name for the debt," a circumstance which, the *Schoenhut* court conceded, raised no special evidentiary problems. *Id.* at 1024. In addition, the government never argued that the existence of an independent "gratuity" could invoke Section 656 liability; the government's case traced the *conversion* of the *fraudulently obtained funds* to Hansen's use. Thus, by focussing on points not in issue or by using language inappropriate in a case alleging *active* fraud, Hansen's proffered instructions would have been at worst confusing and at best duplicative of the knowledge and intent requirement spelled out in the jury instructions noted *supra.* The full substance of the defendant's position—the lack of unlawful intent—was before the jury. *United States v. Cina,* 699 F.2d at 864; *United States v. Baskes,* 649 F.2d 471, 479 (7th Cir.1980).

### B. *Sufficiency of the Evidence*

■ Hansen next contends that there was insufficient evidence to support his conviction. Chiefly, he argues that proof of requisite intent is lacking, for neither he nor Moeckel "ever meant to injure the Bank or hurt it in any way," but rather they intended simply to ameliorate Moeckel's financial plight so that the latter could repay his outstanding loans. Hansen, however, misconceives the nature of the intent required to support Section 656 liability.

Requisite intent "exists whenever the defendant acts knowingly and the result of his conduct would be to injure or defraud the bank, *regardless of his motive.* . . . Reckless disregard of the interests of the bank is equivalent to intent to injure or defraud." *United States v. Schoenhut,* 576 F.2d 1010, 1024 (3d Cir.1978) (emphasis added). *United States v. Tokoph,* 514 F.2d 597, 604 (10th Cir.1975). Accordingly, Section 656 convictions have been upheld in cases precisely like the one at bar where the defendant officer arranged to convert loans to his use through kickbacks, while concealing his interest from the Bank; in such circumstances, "[t]he deception of the . . . bank . . . had a natural tendency to injure the bank." *United States v. Farrell,* 609 F.2d 816, 820 (5th Cir.1980); *United States v. Twiford,* 600 F.2d 1339, 1341 (10th Cir.

**1220**

1979); *United States v. Cooper*, 464 F.2d 648, 651 (10th Cir.1972).

Here, the uncontested evidence showed that the loans were fraudulently made by Hansen to Moeckel in the name of third parties without their knowledge or consent, and that the proceeds thereof were deposited in Moeckel's business account for his use and for payment to Hansen. Unquestionably, the natural consequences of Hansen's conduct was to cause loss to the Bank for the benefit of the defendants through a scheme of false documentation and receipt of funds under circumstances which forbade such receipt in a legal manner. Hansen's exculpatory argument concerning his sole desire to assist Moeckel relates only to his "motive," not his "intent," and as such is irrelevant to a review of the sufficiency of the evidence. *United States v. Schoenhut*, 576 F.2d 1010, 1024 (3d Cir.1978). The jury verdict was amply supported.

### C. *Admission of the Recorded Conversation*

Hansen next argues that the trial court erred in admitting, over his objections, the tape of an inculpatory conversation between Hansen and Moeckel (to whom the recording device was attached) which took place after the FBI investigation of Hansen had commenced. Hansen contends that admission of the tape violated his Fifth and Sixth Amendment rights and Rule 403 of the Federal Rules of Evidence.

■■■ Hansen first argues that his right against self-incrimination was trammeled since the taped conversation occurred after he had become the "focus" or "target" of an investigation, although he was not at the time formally charged. However, Hansen's theory that Fifth Amendment rights commence at the starting point of the investigation has been flatly rejected by the Supreme Court; to qualify for suppression on Fifth Amendment grounds, the interview must have occurred in a coercive "custodial setting". *Beckwith v. United States*, 425 U.S. 341, 347, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976); *United States v. Jiminez*, 602 F.2d 139, 144–45 (7th Cir.1979). Here, the conversation took place voluntarily, with no

suggestion that Hansen's freedom to terminate or leave the conversation was in any way restrained. *United States v. Jiminez*, 602 F.2d at 145.

■■■ Likewise, Hansen's Sixth Amendment claim must fall, for it is settled that the right to counsel attaches only after such time as adversary judicial proceedings have been initiated against him. *Kirby v. Illinois*, 406 U.S. 682, 688–90, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972). Here, six months passed between the taped conversation and Hansen's arraignment. *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), cited by Hansen, is inapposite, for there the interview occurred after defendant's indictment.

Alternatively, Hansen argues that the court erred in admitting the tape because its prejudicial effect outweighed its probative value. As evidence of its prejudicial effect, Hansen points to a single off-hand remark, which he made in the course of the conversation, expressing his dislike of a colleague unconnected with the events at issue: "Some day, you know, five years from now, uh, put a contract out on him or something. God, he is a _____ _____." It is doubtful that this remark would be interpreted, as Hansen claims it would, as evidence of "conduct of a criminal nature"; at most it would be seen as evidencing a casual braggadocio, not a criminal propensity. Moreover, significantly, Hansen never requested at trial that the tape be redacted in order to remove the single offending sentence. In view of the fact that the rest of the taped conversation touched upon a wide variety of details and consequences of the events at issue, it is hard to see how this single isolated comment caused a "major prejudicial effect" outweighing only "minor probative value." *United States v. Pate*, 426 F.2d 1083, 1086 (7th Cir.1970).

### D. *Variance in Proof*

■■■ Hansen penultimately contends that the court erred in denying his motion for acquittal on the basis that there existed a fatal variance between indictment and

proof at trial. Specifically, the indictment named "Allen County Bank and Trust" as the defrauded Bank, but the proof showed that the name of the Bank at the time of Hansen's offenses was "Allen County State Bank." Except for the name change, made a few months after the offenses took place, the two banks were identical.

Variance between indictment and proof is permitted if it does not affect an "essential" element of the offense so as to impair the substantial rights of the accused. *United States v. Cina*, 699 F.2d 853 at 856, 858 (7th Cir.1983); *United States v. Nicosia*, 638 F.2d 970, 976 (7th Cir.1980). The variance must not impinge upon the defendant's right to be definitely informed as to the charges against him so that he may prepare a defense, or his right to be protected against another prosecution for the same offense. *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). Here, the alleged conduct was spelled out in sufficient detail (including, *e.g.*, the identification number of each check fraudulently obtained) to avoid both vagueness and double jeopardy. Hansen could not have been prejudiced by the variance. *United States v. Cina*, 699 F.2d at 858.

E. *Denial of Exculpatory Materials*

Hansen finally maintains that he was denied access to exculpatory materials in the possession of the government in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* requires that the defendant be given evidence favorable to him where that evidence is material to either guilt or punishment. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196.

Here, the suppressed materials consisted of FBI interview reports produced in connection with a parallel investigation of the defrauded Bank. This court has examined those materials *in camera*. Hansen's name appears only three times in these documents; nothing in them even tangentially concerns the events or transactions at issue in the trial. Since this information was not remotely material to the defendant's guilt or innocence in this case, there was no error in its suppression. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196.

*Conclusion*

For the foregoing reasons, defendant-appellant Hansen's conviction is affirmed.

AFFIRMED.