**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kay HOLLAND and Jean Williams,
Defendants-Appellants.**

No. 86–1553.

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1987.

Decided Sept. 21, 1987.

As Amended on Denial of Rehearing and
Rehearing En Banc Dec. 1, 1987.

Jose D. Padilla, Gessler, Wexler, Flynn, Laswell & Fleischchmann, Bruce H. Bornstein, Chicago, Ill., for defendants-appellants.

Bobbie McGee Gregg, Asst. U.S. Atty. (Anton R. Valukas, U.S. Atty.), Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.

BAUER, Chief Judge.

Defendants Kay Holland and Jean Williams were convicted of aiding and abetting the misapplication of federally insured funds in violation of Title 18, United States Code, §§ 2 and 656, and of aiding and abetting the interstate shipment of three cashiers checks taken by fraud, in violation of Title 18, United States Code, §§ 2 and 2314. After a jury trial, each defendant was sentenced to ninety days imprisonment and five years probation, the sentences to run concurrently. On appeal, Holland and Williams challenge their convictions on three separate grounds: (1) the evidence was insufficient to support the guilty verdict; (2) the failure to sever defendants' trials from co-defendant James Gastineau's necessitates reversal; and (3) the court erroneously gave an "ostrich" jury instruction and failed to define "willful". We disagree with all three arguments and affirm the judgments of conviction.

## I.

Holland's and Williams' convictions stem from their involvement in a scheme to obtain financing to purchase Paradise Apartments, an apartment complex in the Bahamas. Holland and Williams are college-educated businesswomen. Both defendants had extensive experience in real estate transactions, both personal and professional. Holland attended Howard University and the National Association of Housing Specialists Institution. In addition, she owned several properties. She owned a home in joint tenancy with her husband on

two acres of prime commercial property in Alexandria, Virginia. She was employed as Executive Director of the Saunders B. Moon Housing Development Corporation in Fairfax County, Virginia ("HDC").

Williams was employed by Federal National Mortgage Association ("Fannie Mae") as manager of the Loan Accounting Division. She also worked as an accountant for the Internal Revenue Service. In addition to her employment experience, Williams owned a home in joint tenancy with her husband. She and her husband also owned fifteen acres of property near Colorado Springs, Colorado, and eight lots outside Atlantic City, New Jersey.

Defendants' problems began when a number of financial institutions in the United States refused to accept Bahamian real estate as collateral for a loan. Holland and Williams eventually obtained financing by participating in an elaborate scheme to defraud two banks, the Tri–State Bank of Markham, Illinois, and Savings One Association of Dresden, Ohio. Essentially, the plan was for Gilbert Rochon, president of Meridian Funding of New York and the defendants' loan broker, to borrow $1.65 million from Savings One, then lend approximately $950,000 to Martin Schaffer and George Worling,[1] to finance the purchase of Tri–State Bank. The loan to Schaffer and Worling was based on the condition that Tri–State lend approximately $400,000 to defendants Holland and Williams. The Spring Garden Apartment Complex, property owned by Holland's stepfather, Bruce Saunders and his partner Jube Shaver, served as collateral for the $1.65 million loan to Rochon from Savings One. Worling and Schaffer were told that Holland and Williams would withdraw the Spring Garden Apartments as collateral for the $1.65 million loan and Worling and Schaffer would lose Tri-State Bank if Holland and Williams did not receive the loan.

Because the amount was in excess of Tri-State Bank's lending limit, Gastineau, (also named in the indictment) suggested that the bank make three loans of $131,000, each of which would be within the bank's legal lending limit.

Tri-State Bank cut three checks for $131,000 each, one made payable to Holland, one to Williams, and the third to HDC. After completing paperwork at the Tri-State, Holland, Williams, Worling, and Rochon went to a bank to cash the checks. Holland endorsed the check made payable to HDC. Of the total $393,000, Holland and Williams paid $87,000 to Rochon, $233,000 to the sellers of Paradise Apartments, and $1,500 to Bruce Saunders. Williams kept $44,000 and Holland kept $15,000. Of the $393,000 borrowed by Holland and Williams, Tri–State recovered only $15,000.

## II.

The defendants argue that the evidence failed to establish that they possessed the requisite intent to aid and abet misapplication of funds or interstate shipment of checks taken by fraud. A defendant seeking to reverse a conviction for insufficient evidence "bears the heavy burden of showing that the evidence, viewed in the light most favorable to the government, could not have persuaded any rational trier of fact of defendant's guilt beyond a reasonable doubt." *United States v. Balistrieri*, 778 F.2d 1226 (7th Cir.1985). Viewed in the light most favorable to the government, the evidence established that both Holland and Williams knowingly associated with and participated in the crimes for which they were convicted.

 To sustain the convictions under 18 U.S.C. § 2 (1982), the government had the burden of proving (1) that Holland and Williams shared the criminal intent of the

---

1. Also named in the indictment were Gilbert Leonard Rochon, Lezlie C. Berthel, James B. Gastineau, Wallace A. Boesch, Richard Cockerham, Alfred S. Cilella, Robert Chapman, Stanley Cooke, George Worling, and Martin B. Schaffer. O.R. 1. Rochon, Berthel, Worling, Schaffer, and Cilella entered guilty pleas. O.R. 134, 106, 103, 89. Cooke was tried separately in a bench trial and convicted. O.R. 155. Cooke's conviction was affirmed on appeal in an unpublished decision. *United States v. Cooke*, No. 86–1540 (7th Cir. Jan. 20, 1987). Boesch, Cockerham, and Chapman were tried together and convicted. Their appeal was dismissed in an unpublished order. *United States v. Boesch*, No. 86–2099 (7th Cir. Dec. 30, 1986).

principals named in each count; and (2) that Holland and Williams each committed at least one overt act designed to aid in the success of the venture. *United States v. Beck*, 615 F.2d 441, 448–49 (7th Cir.1980). The evidence was overwhelming on both points. The government had to show that Worling and Schaffer misapplied the funds of the Tri–State Bank and that Holland and Williams associated with and participated in that misapplication. *United States v. Bruun*, 809 F.2d 397 (7th Cir.1987); *United States v. Mullins*, 355 F.2d 883 (7th Cir.1966). Misapplication occurs whenever a bank officer or director causes a loan to be made in contravention of bank policy and procedure without disclosing that he has a personal interest in the transaction. *United States v. Angelos*, 763 F.2d 859, 861 (7th Cir.1985).

■ Worling and Schaffer, as directors of the Tri–State Bank, approved the loans to Holland and Williams without having seen any loan applications or credit history. Neither the board of directors nor any loan committee approved the loans, although phony Board of Directors' minutes were prepared. Although not every unauthorized loan by a director is a misapplication of funds, *United States v. Shively*, 715 F.2d 260, 266 (7th Cir.1983), the evidence established that Worling and Schaffer acted in their own interest, and that the breach of bank policies posed a risk of loss to the bank. Here, the evidence established that: (1) Worling and Schaffer made the loan to keep their interest in Tri–State Bank; (2) the board of directors did not have any knowledge of the loan, much less approve it; (3) Worling and Schaffer acted in contravention of bank policy by exceeding the lending limit. "The intent to defraud required to support liability ... is minimal." *United States v. Hansen*, 701 F.2d 1215, 1218 (7th Cir.1983). All that is required is proof that the bank fiduciary took financial advantage of his confidential relationship with the bank. *United States v. Angelos*, 763 F.2d at 861. Worling and Schaffer admit that they misapplied Tri–

State Bank's funds in order to keep their interest in the bank. (Tr. 450, 515).

The next step is to determine if sufficient evidence exists to show that the defendants also intended to defraud Tri–State Bank and that they committed an overt act in furtherance of the scheme to defraud the bank. We may infer defendants' intent from the facts and circumstances attendant to their borrowing from Tri–State Bank. *United States v. Pope*, 739 F.2d 289, 291–92 (7th Cir.1984); *United States v. Beck*, 615 F.2d 441, 449 (7th Cir.1980).

■ The defendants argue that the evidence was insufficient to support the guilty verdict on the aiding and abetting misapplication of bank funds charge because they each thought that they were entering into a legitimate loan transaction. Both argue that no evidence was presented at trial to indicate that they acted with knowledge of the illegal activity by Worling and Schaffer. For example, they claim no knowledge that the bank's legal lending limit was being circumvented, or that a phony Board of Directors meeting had approved the loan. Each argues further that they signed a valid and legal promissory note, which they understood legally obligated them to the bank for repayment. We find defendants' arguments unpersuasive and irrelevant. We said in *United States v. Angelos*, 763 F.2d at 861, that intention to repay a loan is irrelevant. To be guilty under § 656, the defendants need only have the intent to defraud, the intent to injure the bank (by defaulting) is not required. *Id.* Holland and Williams closed the loan under most suspicious circumstances. At the instruction of Rochon, they took a private plane at 5:00 a.m. to a farmhouse in Ohio (not a bank), where they waited six hours for the others to arrive. When they did, the defendants forged documents, including the financial statements and cover letter purportedly from Timothy Powell, an accountant, and a letter stating the unpaid balance on the Spring Garden Apartment mortgage.[2] Defendants also forged doc-

---

**2.** The Spring Garden Apartments, used as collateral for the $1.65 million dollar loan to Meridi-

an Funding was owned by Holland's stepfather. Holland admitted that she knew that the part-

uments purportedly on behalf of HDC, signing as "president" and "vice president", respectively. In addition, they each supplied false information concerning their employment and salary on the loan applications, leaving most of the applications blank. Finally, defendants paid Rochon $50,000 of the proceeds at his insistence. Based on all these facts and circumstances, the jury reasonably inferred that the defendants knew that the transaction was tainted by fraud and that they intended to defraud Tri–State Bank.

·To establish the second element of aiding and abetting, the government had to show that each defendant committed an overt act in furtherance of the scheme to defraud. Both Holland and Williams supplied false information to Tri-State Bank and purported to obligate HDC to repay one of the $131,000 loans, knowing that they had no authority to do so. This conduct alone is sufficient to support the jury's finding that Holland and Williams participated in the misapplication of funds.

█ Holland and Williams were also convicted of aiding and abetting the interstate shipment of three cashiers checks known to have been taken by fraud from Dayton, Ohio, to Markham, Illinois. For the purpose of an indictment charging interstate transportation of fraudulently taken checks, section 2314 requires: (1) knowledge that certain property has been stolen or obtained by fraud, and (2) transporting it, or causing it to be transported, in interstate commerce. *Pereira v. United States,* 347 U.S. 1, 9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954); *United States v. Mosley,* 786 F.2d 1330, 1334 (7th Cir.1986).

█ The evidence clearly indicates that the defendants knew that they were participating in a fraud. The knowledge that the checks were taken by fraud may be inferred from their conduct and from all the circumstances surrounding the loan transaction. *Pereira v. United States,* 347 U.S. at 10, 74 S.Ct. at 363; *United States v. Pope,* 739 F.2d 289, 291–92 (7th Cir.1984);

*United States v. Beck,* 615 F.2d 441, 449 (7th Cir.1980). Holland and Williams tried for several months to obtain a loan. They were unsuccessful because American lenders would not accept foreign property as collateral. Knowing this, the defendants participated in Rochon's scheme to finance their property. The surreptitious nature of the loan transaction supports the conclusion that the defendants were well aware of the illegality of their acts. *See United States v. Bruun,* 809 F.2d 397, 404 n. 7 (7th Cir.1987). The transaction occurred at a farmhouse not a bank. Defendants never applied for a loan. They lied on the documents and left blank spaces on them. The jury reasonably inferred knowledge from the facts and circumstances surrounding the loan.

To establish the second element of interstate shipment, the government need only show that the defendants presented the checks, drawn on an out-of-state bank, to the Ohio bank for collection. It follows that the defendants intended the Ohio bank to send the checks across state lines. *See Pereira v. United States,* 347 U.S. at 9, 74 S.Ct. at 363.

### III.

█ Defendants argue that they were deprived of a fair trial because the district court failed to sever their trial from that of their co-defendant, Gastineau. They argue that because of the complex nature of the evidence introduced at trial, it was impossible for the jury to separate the evidence as it related to Holland and Williams. Federal Rule of Criminal Procedure 12(b)(5) provides that "request for a severance of charges or defendants must be made prior to trial." The record is devoid of any motion by defendants at any time for severance of their trial from Gastineau. Having failed to move for severance prior to trial, the defendants waived the right to argue the issue on appeal. *United States v. Gill,* 490 F.2d 233, 239 (7th Cir.1973) (where

nership agreement between Saunders and Shaver prohibited encumbrances on the property,

yet she used the property as collateral anyway.

defendants consented to be tried on two counts of extortion and perjury, and the co-defendant, by joining in the motion, waived his right to object.) Moreover, the decision to grant or deny severance is left to the judgment of the trial court and we will not reverse this decision absent a clear abuse of discretion. *United States v. Dounias*, 777 F.2d 346, 348 (7th Cir.1985). A defendant has an extremely difficult burden of showing on appeal that the lower court's action was an abuse of discretion. *United States v. Shively*, 715 F.2d 260, 267 (7th Cir.1983). The balancing of the cost to the government to conduct separate trials and possible prejudice to the defendants in a single trial is better done by the trial court. *Id.* Holland and Williams have failed to demonstrate that the joint trial resulted in actual prejudice. They argue that they were prejudiced by the introduction of inflammatory evidence against Gastineau. However, when the witnesses' testimony related solely to the charges against Gastineau, the district court gave a limiting instruction. The limiting instructions, coupled with the final jury instructions were sufficient protection against prejudice to the defendants.

## IV.

■ Holland and Williams argue that the district court erred in giving an "ostrich" instruction informing the jury that actual knowledge and deliberate avoidance of knowledge are the same. At trial, the defendants admitted that they accepted the loan from Tri–State Bank and endorsed the checks for collection, but they argue on appeal that they did not know that Worling was misapplying bank funds or that the cashiers checks were procured by fraud. They argue that they did not possess "the large amount of knowledge that required further investigation pursuant to this instruction."

The district court instructed the jury that:

A person acts 'intentionally' when he does something voluntarily and fully understands the nature of his act. This is what I mean whenever in these instructions I use the words 'intentionally,' or 'knowingly.' These words mean essentially the same thing. Whether an act was done 'intentionally' or 'knowingly' may be proven by defendants' conduct and by all the facts and circumstances surrounding the case, including conscious and purposeful avoidance of learning the truth when a defendant knows of facts which create an obligation to further investigate and deliberately fails to do so in order not to learn the truth. (Tr. 1827).

This instruction is based on instruction 4.05 from the 1965 Seventh Circuit's *Manual on Jury Instructions in Federal Criminal Cases*. The revision of the instruction on knowledge in the 1980 version omits the point that the jury may infer knowledge from deliberate ignorance when the circumstances call for investigation. Nonetheless, we have held that instruction 4.05 from the 1965 pattern jury instructions is a permissible charge. *See United States v. Touloumis*, 771 F.2d 235, 243–44 (7th Cir. 1985); *United States v. Josefik*, 753 F.2d 585, 589 (7th Cir.1985); *United States v. Ramsey*, 785 F.2d 184, 189 (7th Cir.1986). There is, however, an undercurrent of dissatisfaction with the instruction. We suggested several preferable formulations in *Josefik, supra*, 753 F.2d at 589. The problem is that the "ostrich" instruction is confusing. What the "ostrich" instruction really says is that a person who has enough knowledge to prompt an investigation and then avoids further knowledge really does know all that the law requires. As we said in *Ramsey*, 785 F.2d at 190, "federal courts should be able to do better than continuously repeat an instruction that is opaque and unhelpful to jurors." There we suggested that a more understandable instruction would be: "You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that a person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly, as I have used that word." We do not require the giving of any particular

instruction, but we commend this example as a possibility to the district judges. The "ostrich" instruction that was given in this case is not reversible error, but it is not a good idea. The inherently suspicious nature of the loan transaction suggests a high probability that the defendants were aware that the loan agreement was illegal. Therefore, the "ostrich" instruction used here did constitute harmless error.

 Holland also argues that the district court erroneously failed to give an instruction defining "willful". Holland, however, did not tender such an instruction to the district court. We said in *U.S. v. McGrath*, 811 F.2d 1022, 1024 (7th Cir. 1987), that "we require a formal submission of a proposed charge, otherwise we will consider alleged defects in the court's instructions only under the plain error doctrine." Moreover, it is unnecessary to give an instruction if the essential points are covered in another instruction. *United States v. Hansen*, 701 F.2d 1215, 1218 (7th Cir.1983). The district court adequately explained the concept of willfulness in the jury instructions and thus did not need to give a separate instruction.[3] For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

**3.** In this case, the district court's instructions defining "intentionally" and "knowingly" adequately explained the concept of "willfulness":

A person acts "intentionally" when he does something voluntarily and fully understands the nature of his act. This is what I mean whenever in these instructions I use the words "intentionally" or "knowingly." These words mean essentially the same thing.

An intentional or knowing act is to be distinguished from an act which is committed as a result of mistake or ignorance. A person who acts in good faith reliance upon information supplied by others lacks the necessary intent and therefore cannot be found guilty of a crime.