**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kenneth R. STONE, Defendant-
Appellant.**

No. 92–1905.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 3, 1993.

Decided March 8, 1993.

Andrew B. Baker, Jr., Asst. U.S. Atty., Dyer, IN (argued), for U.S.

John L. Kelly, Jr., Vegter, Fisher, Kelly & O'Toole, Merrillville, IN, for Kenneth R. Stone.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

A jury found Kenneth Stone guilty of passing, uttering, and publishing a United States Treasury check that bore a forged signature, a misdemeanor. *See* 18 U.S.C. § 510(a). Stone received a sentence of ninety days in prison to be followed by one

year of supervised release, and was ordered to make restitution to the Bank of Highland for $368, the amount of the check. Stone appeals his conviction, maintaining that the magistrate judge should not have given an "ostrich" instruction informing the jury that actual knowledge and deliberate avoidance of knowledge are the same. Because the evidence presented at trial supports an inference that Stone deliberately ignored the fact that he was uttering a forged check, we affirm Stone's conviction.

## I. BACKGROUND

A detailed narration of the facts is necessary. Doris Barnes stole a Social Security check worth $368 from Oletha Campbell's porch. The check was payable to Oletha for her son David, who suffered severe health problems. Doris took the check to the residence of her sister Annette Barnes, who lived with Stone's sister, Sharon Hacker. In the presence of Sharon and Sharon's mother, Doris stated that she needed someone to cash a check for her. She did not disclose that she had stolen the check, but she said that she would pay $100 to anyone who would cash it for her. Then Stone arrived. He had been introduced to Doris on a previous occasion, and the two had seen each other at least six or seven times at Annette's home. He called her "Doris" and she called him "Kenny."

Stone's sister initially approached him about cashing the check. Then Doris asked him to do it, telling him that she would give him $100 for his trouble. Informed that it was a Social Security check, Stone responded, "We'll see." Doris told Stone that she needed the money badly, but did not say that she had stolen the check or that she lacked proper identification. Ultimately, Stone drove Doris to Highland Bank, where he had an account. On the way, Doris showed him the check. At the bank, she forged Oletha Campbell's endorsement on the check, and Stone signed as the second endorser. Neither Stone nor the bank questioned Doris's use of the name "Oletha Campbell," and nobody asked her for identification. The bank paid $368 to Stone, who gave the money to Doris. She then gave Stone the agreed-upon $100.

When the Treasury returned the forged check, the scam soured. The bank dunned Stone, who paid back $125. Angry, and now $25 in the hole, Stone confronted Doris and demanded that she pay him for the check. She told him to come back in a week; he never did.

Stone subsequently made an oral statement to a Secret Service agent in which he failed to disavow that the check was Doris's. In a subsequent written statement, however, he claimed that he lacked such knowledge. Trial was held before a magistrate judge, who had subject matter jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3401.

The court, in its final instructions to the jury, read a conscious avoidance, or "ostrich," instruction. Stone did not object, and the jury found him guilty. Stone appealed to the district court, challenging the sufficiency of the evidence, but not the ostrich instruction. The district court affirmed. After being granted a motion to file a belated notice of appeal, Stone appeals to this court, raising for the first time his challenge to the ostrich instruction.

## II. DISCUSSION

Stone's appeal is straightforward. He contends that the magistrate judge erred in instructing the jury as follows:

When the word "knowingly" is used in these instructions, it means that a defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake, or accident. Knowledge may be proved by the Defendant's conduct and by all the facts and circumstances surrounding the case. You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that a person had a strong suspicion that things were not what they seemed, or that someone had withheld some important fact, yet shut his eyes for fear of what he would learn, you may conclude

that he acted knowingly, as I have used the word.

This formulation of the ostrich instruction was developed in *United States v. Ramsey*, 785 F.2d 184, 190–91 (7th Cir.), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2924, 91 L.Ed.2d 552 (1986), and has been repeatedly endorsed by this court. *See United States v. Gonzalez*, 933 F.2d 417, 433–34 (7th Cir.1991) (listing cases). Stone does not challenge the specific language of this instruction, but maintains that giving the instruction was improper because there was no evidence presented by the government that Stone deliberately sought to avoid knowledge of the forgery.

■ The government does not contend that Stone waived his claim on appeal by failing to raise it below, although such a contention would have merit. *See Colon v. Schneider*, 899 F.2d 660, 671 n. 18 (7th Cir.1990); *Keene Corp. v. International Fidelity Ins. Co.*, 736 F.2d 388, 393 (7th Cir.1984). No matter. The government waived the defense of waiver by failing to raise it on appeal. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991); *Garlington v. O'Leary*, 879 F.2d 277, 282 & n. 6 (7th Cir.1989).

■ Both parties to this dispute agree that, since Stone did not object in the trial court to the court's use of the ostrich instruction, he must show that use of the instruction constituted plain error. This is no easy task. "[I]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). Indeed, "plain error must be of such a great magnitude that it probably changed the outcome of the trial." *United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir. 1987). Stone must show that correction of the error is necessary to prevent a "miscarriage of justice." *United States v. Young*, 470 U.S. 1, 15 & n. 12, 105 S.Ct. 1038, 1046 & n. 12, 84 L.Ed.2d 1 (1985). And there is no miscarriage of justice if Stone's guilt is so clear that he would certainly have been convicted even if the error had never been committed. *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir.1988).

■ The ostrich instruction is designed for cases in which there is evidence that the defendant, knowing or strongly suspecting that he is involved in shady dealings, deliberately avoids acquiring full or exact knowledge of the nature and extent of those dealings. *United States v. Giovannetti*, 919 F.2d 1223, 1228 (7th Cir. 1990); *United States v. Holland*, 831 F.2d 717, 722 (7th Cir.1987). The instruction should be given only when it addresses an issue reasonably raised by the evidence. *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir.1988), *cert. denied*, 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989). An issue is raised by the evidence when the defendant claims a lack of guilty knowledge and there are facts and evidence that support an inference of deliberate ignorance. *United States v. Caliendo*, 910 F.2d 429, 433 (7th Cir.1990); *United States v. Talkington*, 875 F.2d 591, 596 (7th Cir. 1989). Both elements are present here.

■ Stone's defense was that he lacked guilty knowledge. He claimed that he did not know at the time that he cashed the check that it had been stolen, and that he had no reason to doubt that the individual for whom he cashed the check was Oletha Campbell. Stone presented evidence that he met Doris for the first time on the day they cashed the check. Stone's sister testified, albeit equivocally, that Annette had introduced Doris to Stone without disclosing Doris's name. Stone testified that he helped cash the check because he felt sorry for Doris, who had told him that she lost her identification in a fire.

The facts and evidence presented at trial support the inference that Stone deliberately ignored the fact that Doris had stolen the check and forged Oletha Campbell's endorsement. On cross-examination, Stone acceded to the government's characterization of his actions as "remaining deliberately ignorant." Stone testified that he did nothing to confirm Doris's identity before he helped her cash the check. Doris testified that she had been introduced to Stone as "Doris" on a prior date, that they had seen each other over seven times, and that

they referred to each other by their first names. Doris further testified that Stone stood next to her at the bank and watched her sign Oletha Campbell's endorsement on the check. Stone accepted $100 from Doris for cashing the check, which was worth only $368, although he admitted knowing that currency exchanges and stores cash checks for nominal fees.

■ Stone insists that the ostrich instruction should not have been given because the government failed to show that he engaged in specific overt acts to avoid discovering that Doris had stolen the check and forged Oletha Campbell's endorsement. This contention might have merit if the facts required the jury to make a binary choice between Stone's actual knowledge and complete innocence. *See Giovannetti*, 919 F.2d at 1228; *Diaz*, 864 F.2d at 550; *United States v. Alvarado*, 838 F.2d 311, 315–16 (9th Cir.1987), *cert. denied*, 487 U.S. 1222, 108 S.Ct. 2880, 101 L.Ed.2d 915, and *cert. denied*, 488 U.S. 838, 109 S.Ct. 103, 102 L.Ed.2d 78 (1988); *United States v. Manriquez Arbizo*, 833 F.2d 244, 248–49 (10th Cir.1987). The ostrich instruction in such a case would improperly allow the jury to convict on the basis of what Stone should have known, but did not. That is not this case, for the jury's choice was not binary. The government produced enough circumstantial evidence to raise the inference that Stone's ignorance was motivated by sufficient guilty knowledge to constitute intent. The ostrich instruction in this case served the useful purpose of informing the jury that it may look at a charade of ignorance as circumstantial proof of knowledge.

Moreover, the deliberate effort to avoid guilty knowledge, which triggers the ostrich instruction, need not consist of physical acts. Evidence of purely psychological avoidance, a cutting off of one's normal curiosity by an effort of will, can serve as a basis for the ostrich instruction. *See United States v. Miller*, 962 F.2d 739, 746 (7th Cir.1992); *Gonzalez*, 933 F.2d at 435 & n. 13; *Giovannetti*, 919 F.2d at 1228–29; *United States v. Josefik*, 753 F.2d 585, 589 (7th Cir.), *cert. denied*, 471 U.S. 1055, 105 S.Ct. 2117, 85 L.Ed.2d 481 (1985). This is particularly relevant in cases like this one where circumstantial evidence suggests that the defendant possessed enough information to prompt further investigation, but he did not delve for fear of what he might learn. The government produced evidence that Stone had met Doris before, that he knew her name, that he knew that the check was payable to Oletha Campbell, and that he was aware that currency exchanges and stores cashed checks for nominal fees. Even if we accept the unlikely proposition that Stone was unaware that Doris was not Oletha Campbell, his ignorance could only have been the result of a cutting off of his normal curiosity by an effort of will. It stretches credulity to suppose that the rightful payee of a Social Security check would be willing to give up almost one-third of its value to have Stone cash it for her. Yet Stone was willing to cash the check and accept his fee without so much as asking the woman her name.

## III. CONCLUSION

The facts and evidence presented at trial support the inference that Stone, sensing the opportunity to pocket an easy $100, deliberately ignored the fact that he was uttering a forged check. The magistrate judge committed no error, plain or otherwise, in giving the ostrich instruction to the jury at Stone's trial. Stone's conviction therefore is AFFIRMED.