Billy QUINN, Petitioner–Appellant,

v.

Michael V. NEAL, Warden, Danville Correctional Center, Respondent–Appellee.

No. 92–1273.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1992.

Decided July 13, 1993.

Rehearing Denied Sept. 3, 1993.

Alan D. Goldberg (argued), Office of the State Appellate Defender, Chicago, IL, for petitioner-appellant.

Terence M. Madsen, Asst. Atty. Gen. (argued), Crim. Appeals Div., Chicago, for respondent-appellee.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and GRANT, Senior District Judge.[1]

GRANT, Senior District Judge.

Before the court is an appeal from a denial of Billy Quinn's petition for writ of habeas corpus. Following a bench trial in Cook County Circuit Court, the petitioner Quinn was found guilty of the murder of his girlfriend's two-year-old daughter and was sentenced to a term of thirty-five years in the Illinois Department of Corrections. The Appellate Court of Illinois affirmed the judgment of the trial court, and the Illinois Supreme Court denied Quinn's petition for review. His state remedies exhausted, Quinn then filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. When the district court denied the petition, Quinn filed a timely appeal in this court. The single issue raised is the limitation of his Sixth Amendment right to cross-examine an adverse witness. For the following reasons, we affirm.

## I. BACKGROUND

The beating death of Crystal Lee, the two-year-old daughter of Jenny Hogue, occurred on April 4, 1986 between 2:00 a.m. and noon in Billy Quinn's basement apartment, where Ms. Hogue and her three children lived with Quinn. Quinn was charged with the murder. He was tried on July 1, 1987, before Judge Michael B. Getty. Since the parties have not disputed the state court findings of fact and we presume their correctness, 28 U.S.C. § 2254(d), we summarize those facts from the unpublished state appellate court opinion, *People v. Quinn,* No. 86 CR 5498 (Ill.App. Aug. 14, 1990).

The first witness at trial was Jenny Hogue. She testified that, on April 3, 1986, she and her three children had been living with Quinn in the basement of a two-flat for about three weeks. Quinn's brother also lived in the basement and his mother, great-grandmother, uncle, and sister lived upstairs. Around 9:00 p.m. Ms. Hogue bathed each of her children; she noticed no unusual markings on Crystal's body. After putting the children to bed, she left the house. Her children and Quinn were in the basement.

When Ms. Hogue returned around 2:00 a.m., her four-year-old son told her that Crystal was dead. Quinn repeated the boy's statement because Ms. Hogue did not understand her son. She then went to the bed and put her hand on the cover over Crystal's back. She could feel that Crystal was breathing and that her head was warm. Although the television emitted some light, the basement lights were not on and she did not pull back the cover or check for any bruises. She and Quinn watched television and later went to bed. She did not hear Crystal cry during the night.

On the morning of April 4, Ms. Hogue and Quinn awakened and went upstairs for breakfast; her two sons came up about 15 minutes later. Quinn left the house around 11:00 a.m. At about noon Ms. Hogue went downstairs and called Crystal's name, but the child did not move. She then turned on the basement lights and saw Crystal lying crossways at the foot of the bed with mucus on the side of her mouth. She noticed three red spots on Crystal's chest, which were not there the previous evening when she bathed her. The child was cold and stiff. She was wearing clothes different from those Ms. Hogue had placed on her the night before.

---

1. Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, sitting by designation.

Initially, Quinn stated to the investigating detectives that he had gone to bed between midnight and 1:00 a.m., but was soon awakened by Crystal, who indicated she had to go to the bathroom. When he discovered that she had already wet herself and the bed, he slapped her twice on her buttocks, took her upstairs to the bathroom, changed her clothes, and put her back in bed. Quinn then went back to sleep. A short time later Ms. Hogue returned. Quinn stated that they briefly conversed and then went to sleep. He got up the next morning between 10:00 and 11:00 a.m., got dressed, and left the house.

In a subsequent oral statement, Quinn made substantially the same statement, but added that he "popped" Crystal twice alongside the head with the middle knuckle of his hand protruding, and "popped" her once in the center of the chest.

Assistant State's Attorney Mary Jo Kelly reviewed the police and medical reports and then met with the defendant. During this conversation, Quinn demonstrated how he hit Crystal by striking the palm of his hand. According to Kelly, the striking was at "a large velocity." Quinn then agreed to make a statement. His 16–page statement, taken by the court reporter, included what he had orally told the police and the Assistant State's Attorney. Quinn also said that Ms. Hogue had given him the right to discipline her children. He stated that, although Crystal had been crying in the bathroom, when he put her to bed she was not crying. He said he did not know if anyone else had hit Crystal that night.

Testimony was also given by Dr. Eupil Choi, an expert in forensic pathology, who conducted the autopsy on Crystal's body on April 5, 1986. He concluded that she died of multiple injuries due to blunt trauma. The internal examination showed contusions on her lung, thymus, diaphragm, small and large intestines, and the soft tissue of the kidneys, and extensive rupture lacerations of the liver and spleen, and blood accumulation in the peritoneal inside of the abdomen. It was Dr. Choi's opinion that strong force was necessary to cause these types of ruptures to the internal organs. The internal injuries corresponded to the skin bruising he observed on Crystal's face, chest, abdominal area, back, buttocks, and arm. The doctor concluded that the injuries he observed were inflicted at about the same time and within 12 hours of Crystal's death. The injuries could not have been caused by a fall, but they could have been the result of someone, any adult, striking the body with a closed fist and one knuckle extended. It was unlikely that the internal injuries could have been caused by striking the child on the buttocks or legs with an open palm, or that striking the child once in the chest could have caused all of the injuries.

Quinn presented no evidence at trial. After closing arguments, the trial court found Quinn guilty of the count of murder which charged that he struck and killed Crystal with his fist knowing that such acts created a strong probability of death or great bodily harm. On June 18, 1987, following a sentencing hearing, Quinn was sentenced to 35 years in prison.

On direct appeal the state appellate court affirmed Quinn's conviction and sentence, and the state supreme court denied review. Quinn then sought collateral relief in federal court by filing a petition for writ of habeas corpus. The district court found no violation of his Sixth Amendment right of confrontation and denied his petition.

## II. STANDARDS OF REVIEW

■ We review the district court's denial of a petition for writ of habeas corpus de novo. Hunley v. Godinez, 975 F.2d 316, 318 (7th Cir.1992). An alleged violation of the Confrontation Clause is always a cognizable issue for federal habeas review. Clark v. O'Leary, 852 F.2d 999, 1005 (7th Cir.1988).

■ The Sixth Amendment's Confrontation Clause "provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." Pennsylvania v. Ritchie, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987), citing Delaware v. Fensterer, 474 U.S. 15, 18–19, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (per curiam). The Fourteenth

Amendment has made such rights obligatory on the States. *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). "[T]he right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Ritchie,* 480 U.S. at 52, 107 S.Ct. at 999. It includes the right to conduct reasonable cross-examination of the witnesses testifying against the defendant concerning matters which may demonstrate bias or motive to testify falsely. *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974).

In *Davis v. Alaska,* we observed that, subject to "the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation ..., the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." *Id.,* at 316 [94 S.Ct. at 1110]. We emphasized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.,* at 316–317 [94 S.Ct. at 1110].... Recently, in *Delaware v. Van Arsdall,* 475 U.S. 673 [106 S.Ct. 1431, 89 L.Ed.2d 674] (1986), we reaffirmed *Davis,* and held that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" 475 U.S. at 680 [106 S.Ct. at 1436], quoting *Davis, supra* [415 U.S.] at 318 [94 S.Ct. at 1111].

*Olden v. Kentucky,* 488 U.S. 227, 231, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988) (per curiam). The *Olden* Court underscored the trial court's discretion to "impose reasonable limits on defense counsel's inquiry into the potential bias of a prosecution witness" and reiterated the *Van Arsdall* limiting factors: "harassment, prejudice, confusion of the issues, the witness' safety, or· interrogation that [would be] repetitive or only marginally relevant." *Id.* at 232, 109 S.Ct. at 483, quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

■ Guided by these parameters, an appellate court first examines the trial court's governance of cross-examination under the abuse of discretion standard. *United States v. Neely,* 980 F.2d 1074, 1080 (7th Cir.1992). Consideration of a defendant's ability to cross-examine effectively "turns on 'whether the jury has sufficient information to make a discriminating appraisal of a witness' motive and bias.'"[2] *United States v. Kaufmann,* 985 F.2d 884, 897 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2350, 124 L.Ed.2d 259 (1993), quoting *United States v. Williams,* 858 F.2d 1218, 1223 (7th Cir.1988), *cert. denied,* 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989). *Accord, e.g., Brown v. Powell,* 975 F.2d 1, 5 (1st Cir.1992), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 1035, 122 L.Ed.2d 179 (1993); *Smith v. Collins,* 964 F.2d 483, 486 (5th Cir.1992); *United States v. Guthrie,* 931 F.2d 564, 568 (9th Cir.1991); *Tapia v. Tansy,* 926· F.2d 1554, 1557 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991); *Dorsey v. Parke,* 872 F.2d 163, 167 (6th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 103, 107 L.Ed.2d 67 (1989).

■ If the reviewing court determines that the trial court did exceed its broad discretion when imposing limits on cross-examination, it then analyzes whether that error was harmless. In *Brecht v. Abrahamson,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Supreme Court re-

---

**2.** The Illinois appellate court reviewed Quinn's allegations concerning limited cross-examination· under the same criterion followed by federal appellate courts: clear abuse of the trial court's discretion. *See People v. Crum,* 183 Ill.App.3d 473, 131 Ill.Dec. 843, 851, 539 N.E.2d 196, 204 (Ill.App.1989). The trial court may restrict the scope of cross-examination as long as "sufficient cross-examination to satisfy the constitutional guarantee" has been permitted. *People v. Edwards,* 218 Ill.App.3d 184, 160 Ill.Dec. 679, 685, 577 N.E.2d 1250, 1256 (Ill.App.1991). "If the entire record indicates that the jury was made aware of adequate factors concerning relevant areas of impeachment of a witness, then no constitutional question arises merely because defendant was prohibited from pursuing another line of questioning." *Id.*

cently clarified that the harmless error test for appeals arising collaterally from a petition for writ of habeas corpus is less onerous than the one used in direct appeals.[3] *Id.* —— U.S. at ——, 113 S.Ct. at 1721–22. Holding that "the *Kotteakos* harmless-error standard applies in determining whether habeas relief must be granted because of constitutional error of the trial type," the Supreme Court requires reviewing courts to ask whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at ——, 113 S.Ct. at 1722, quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). Proper application of the *Kotteakos* standard requires a *de novo* examination of the trial record. *Id.* at ——, 113 S.Ct. at 1723 (Stevens, J., concurring).

## III. ANALYSIS

Quinn's claim that the trial court violated his constitutional right of confrontation focuses on two rulings.[4] Sustaining the State's objection on the ground of relevance, the trial court forbad cross-examination of Ms.

3. For claims raised on collateral rather than direct appeal the Court chose the harmless-error standard enunciated in *Kotteakos v. United States*, 328 U.S. at 776, 66 S.Ct. at 1253 (error had substantial and injurious effect on verdict), over the "harmless beyond a reasonable doubt" test established for direct appeals in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). *See Brecht*, —— U.S. at ————, 113 S.Ct. at 1721–22.

4. At oral argument, defense counsel prefaced his Sixth Amendment claim with a more general assertion that the trial court wrongly limited the presentation of his theory of defense. Pointing to the pathologist's testimony that the extent of Crystal's injuries was far greater than the blows admitted by Quinn would have caused, he contended that there were two possibilities for those injuries: either Quinn used more force than he admitted or someone else also struck the child and perhaps killed her. He then insisted that the latter theory of defense was precluded by the judge's restriction of cross-examination.

If this were a new and separate argument, it would necessarily be set aside as waived: A point raised for the first time at oral argument comes too late. *United States v. Rodriguez*, 888 F.2d 519, 524 (7th Cir.1989). True, the State failed to assert the defense of waiver at oral argument, *see United States v. Stone*, 987 F.2d 469, 471 (7th Cir.1993), but we do not require it to reply to a new potential obstacle at that stage, *see Rodri-*

Hogue concerning (1) abuse petitions filed against her in juvenile court and (2) her ongoing relationship with the petitioner. We consider each challenged limitation of cross-examination below.

### A. *Abuse petitions*

■ Petitions for adjudication of the wardship of Jenny Hogue's two remaining children, Lashawn Hogue and Robert Lee, were filed by the Department of Children and Family Services on April 18, 1986, two weeks after Crystal's death.[5] They alleged that the children were in an environment injurious to their welfare. The trial transcript memorializes the court's refusal to allow cross-examination of Ms. Hogue concerning these petitions.

BY MR. McINERNEY [defense attorney]:

Q But, Jenny, sometime after this occurrence, were you named in a petition at Juvenile Court?

MR. VROUSTOURIS [Assistant State's Attorney]: Objection.

*guez, supra,* and therefore will not rule that the government waived its waiver defense. However, because this claim was incorporated into Quinn's confrontation clause challenge as another approach to the appealed issue, we did not dismiss it summarily as waived.

Nevertheless, the trial record clearly refutes this contention. During cross-examination the defense attorney elicited testimony that others could have caused Crystal's injuries (*see* tr. at 48–49, 119, 120–121); that the injuries could have been caused in a number of different ways (*see* tr. at 113); and that Quinn never punched or struck Ms. Hogue's children in the chest in her presence (*see* tr. at 47–48). Based on this evidence, the defense moved for a directed finding of not guilty by arguing that Crystal's death "could have been committed by any person in that home at different times, at the same time. There is really no telling what took place there." Tr. at 152. As the transcript reflects, the defense had abundant opportunity to present its theory that others could have struck or killed the child.

5. The record contains two identical Petitions for Adjudication of Wardship naming individually Jenny Hogue's two children as abused minors, and a Summons to appear and answer the petitions, dated April 18, 1986. *Rec., vol. II,* at 229–31. Defense counsel has stated that the petitions were dismissed without prejudice; however, the record in this case does not document the dismissal of these petitions.

THE COURT: Objection sustained.

MR. McINERNEY: Judge, can I make a record on that later?

THE COURT: Sure. Wait a minute, before you go any further does it have to do with her being charged with this offense, this very offense?

MR. McINERNEY: No, Judge.

THE COURT: Objection is sustained.

MR. McINERNEY: It has to do with an abuse petition filed regarding her remaining two children.

THE COURT: Did it occur—was it filed before or after?

MR. McINERNEY: It was filed days after this occurrence.

THE COURT: Alleging conduct before or after this occurrence?

MR. McINERNEY: I believe alleging conduct before, Judge. Judge, I have it here. Judge, the petition was filed a short time afterwards; I believe April 18th. The summons was filed April 18th, and the petition for adjudication of wardship was part of that, and it's alleged an injurious environment.

MR. VROUSTOURIS: I will object to what it alleges. If it gives a date when certain acts occurred,—

MR. McINERNEY: Judge, I think it goes to her credibility.

THE COURT: Does it allege any conduct prior to the date in question?

MR. McINERNEY: Judge, it does not allege a specific date. It says that—it does not allege a specific date. It alleges that they were in an environment, Robert Lee and Lashaun Hogue—there was an order entered that relates specifically to the defendant.

MR. VROUSTOURIS: We'd object because that has no relevance, what—

THE COURT: Objection sustained.

MR. McINERNEY: I believe it goes to motive much like a pending charge would.

THE COURT: Is it pending now?

MR. McINERNEY: No, Judge, it was dismissed. There was an order entered in May. That order required certain behavior on the part of Ms. Hogue, and in November the petition was dismissed without prejudice. I think there is an ongoing—

THE COURT: Objection is clearly sustained on it. You are not saying that anything occurred as a result of it. If you are—if you would, for example, suggest that there was a change in testimony based upon that filing, or you show some nexus, that would be a different thing.

MR. McINERNEY: My nexus even from this moment, there is a fear on her part she might lose her remaining children.

THE COURT: Objection sustained.

Tr. at 57–59.

Quinn contends that the petitions were dismissed without prejudice to their reinstatement (*but see supra* note 5), and provided for Ms. Hogue a potential motive to testify falsely: the fear of losing her remaining children. Because a trial judge has no discretion to prevent cross-examination about such a prototypical form of bias under *Delaware v. Van Arsdall*, 475 U.S. at 680, 106 S.Ct. at 1435–36, Quinn asserts, Judge Getty's denial of cross-examination concerning the petitions violated his Sixth Amendment right of confrontation.

In *Van Arsdall*, as alleged herein, a pending charge against the witness had been dismissed prior to trial; but in *Van Arsdall* it was known that the dismissal was in exchange for the witness' promise to discuss the defendant's murder case with the prosecutor. The trial court barred any cross-examination about that agreement. The *Van Arsdall* Court, agreeing with the state supreme court that the trial court's ruling violated the mandate of the Confrontation Clause, defined the showing that a defendant must make when claiming constitutional error under the Sixth Amendment.

We think that the criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in *otherwise appropriate* cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which the jurors [as the sole triers of fact and credibility] could *appro-*

*priately* draw inferences relating to the reliability of the witness."

*Id.* at 680, 106 S.Ct. at 1436, quoting *Davis,* 415 U.S. at 318, 94 S.Ct. at 1111 (emphasis added). In our consideration of whether Quinn met his burden of proof, we note that the Court's use of the terms "appropriate" and "appropriately" is crucial: A reviewing court must determine whether a trial court, traditionally granted wide latitude in evidentiary rulings, abused its discretion by imposing unreasonable limits on cross-examination when barring appropriately admissible facts.

In this case the trial court, before precluding inquiry about the petitions filed against Ms. Hogue, asked whether the petitions were related to this offense, alleged specific acts or dates of abuse, and were still pending. The answer given to each question, sometimes with explanation, was "no." Because Quinn did not show "some nexus" or connection between the petitions and anything that occurred at trial, such as a change in Ms. Hogue's testimony, the court refused to allow cross-examination about the petitions.

We believe that determination was well within the trial judge's discretion. Without a showing by Quinn of a link or nexus between the petitions filed against Ms. Hogue and the case against Quinn, the judge as trier of fact could not appropriately draw inferences relating to her reliability. *See United States v. Ellzey,* 936 F.2d 492, 496 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 400, 116 L.Ed.2d 350 (1991) (no violation of confrontation right in limiting cross-examination when insufficient connection made between pending state charges against witness and his testimony in this case). Quinn did not allege,

and nothing in Ms. Hogue's testimony or in the record suggested, that she had received favorable consideration by the State. There was no evidence that the prosecution knew of the petitions or had the authority to dismiss or to reinstate them.[6] Had defense counsel known that the prosecutor was holding the possible reinstatement of the abuse petitions over Ms. Hogue's head "like the sword of Damocles," *see United States v. Anderson,* 881 F.2d 1128, 1139 (D.C.Cir.1989), he would have had available to him "comparable means" to undermine Ms. Hogue's credibility. *See United States v. Burton,* 937 F.2d 324, 331 (7th Cir.1991) (Ripple, J., concurring), quoting *Smith v. Fairman,* 862 F.2d 630, 638 (7th Cir.1988), *cert. denied,* 490 U.S. 1008, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989). We conclude that the trial court afforded the defendant sufficient opportunity at trial to explore the possibility of bias in her testimony. *See Brown v. Powell,* 975 F.2d at 5.

We note, as well, that Ms. Hogue's testimony was consistent with her statement at the time of the investigation, as the Illinois appellate court pointed out, *see People v. Quinn,* No. 87–1969, at 8 (unpublished order), 202 Ill.App.3d 1108, 171 Ill.Dec. 353, 593 N.E.2d 1173, and with Billy Quinn's statement, as well. Thus there is no indication that she altered her story in favor of the prosecution. *See Ellzey,* 936 F.2d at 496. When a defendant is granted sufficient opportunity at trial to cross-examine an adverse witness for bias, and the evidence of petitioner's guilt is overwhelming, a reviewing court "will be hard pressed to find that a constitutional error was committed" by the

---

**6.** The petitions, brought by the Department of Children and Family Services under the Illinois Juvenile Court Act, Ill.Rev.Stat.1985, ch. 37, ¶ 702–4(2)(b) (now reclassified as 705 ILCS 405/2–3 (1992)), were within the jurisdiction of the Cook County Juvenile Court. A detention hearing was set for May 12, 1986. Rec. at 230–31. Had the court found that Ms. Hogue had inflicted abuse on her children, it could not have granted her custody of the children without a hearing concerning her fitness as a parent. 705 ILCS 405/2–23(a). There is no record of findings of abuse or of Ms. Hogue's lack of fitness. Nor is there a record that protective supervision of the children was ordered. 705 ILCS 405/2–24.

A juvenile court may retain jurisdiction over a wardship or guardianship proceeding until the minor involved is [19 or] 21 years old or until the guardianship is no longer in the best interest of the minor. *People in Interest of A.M. v. Herlinda M.,* 221 Ill.App.3d 957, 164 Ill.Dec. 482, 484, 583 N.E.2d 36, 38 (Ill.App.1991). One method of continued jurisdiction is dismissal of the petition without prejudice. Such fluid supplemental proceedings regarding guardianship allow for an easy re-initiation by the parties or by the juvenile court *sua sponte, id.,* but do not provide to the State prosecutor the authority to dismiss them. We do not believe that defense counsel showed that the prosecutor had any leverage over Ms. Hogue's testimony at Quinn's murder trial.

trial court's limitation of cross-examination. *See Brown, supra.*

To bolster his position, however, Quinn relies upon *People v. Triplett*, 108 Ill.2d 463, 92 Ill.Dec. 454, 463–65, 485 N.E.2d 9, 18–20 (1985). In *Triplett* the defendant was precluded from cross-examining the state's occurrence witness concerning (1) his prior contacts with the police; (2) his custodial status at the time of trial; and (3) the ten juvenile delinquency petitions filed against him, four of which had been stricken with leave to reinstate. The Illinois Supreme Court first established that evidence of an arrest or indictment, even though not admissible to impeach credibility generally, is admissible to show a witness' bias, interest, or motive to testify falsely, as long as that evidence "give[s] rise to the inference that the witness has something to gain or lose by his testimony" and is not remote or uncertain. *Id.*, 92 Ill.Dec. at 460, 485 N.E.2d at 15. Following these guidelines the court then determined that the witness' police contacts were too speculative to be admissible, *id.* at 461, 485 N.E.2d at 16, but that the witness' custodial status and the reinstatable delinquency petitions were not too remote to give rise to the inference that the State had some "leverage" over the witness. *Id.* at 462–64, 485 N.E.2d at 17–19. It therefore held that preclusion of cross-examination concerning the witness' custodial status and the delinquency petitions was a violation of the defendant's right to confront the witness against him. *Id.* at 465, 485 N.E.2d at 20.

The *Triplett* decision is both instructive and distinguishable. In it there was cumulatively significant evidence (custody, pending charges, reinstatable charges) excluded from the witness' testimony such that the jury was "exposed to only a small portion of reality" concerning that witness. *Id.* at 465, 485 N.E.2d at 20. However, in this case Ms. Hogue was neither in custody nor charged with a crime. Moreover, it seems reasonable to assume that, if the abuse petitions were reinstatable, jurisdiction and control over their reinstatement was in the hands of the Department of Children and Family Services, not the State's attorney. We conclude, therefore, that the abuse petitions were too remote to give rise to the inference that the witness had something to gain or to lose by her testimony. *See People v. Lewis*, 229 Ill.App.3d 874, 171 Ill.Dec. 562, 569, 594 N.E.2d 414, 421 (Ill.App.1992) (no error in foreclosing cross-examination if no offer of proof of State's leverage over witness or evidence's direct bearing on bias or motive to testify falsely).

Our review of the trial transcript leads us to the conclusion that Quinn had opportunity for effective, even if not limitless, cross-examination. *United States v. Sanders*, 962 F.2d 660, 679 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 262, 121 L.Ed.2d 192 (1992), quoting *United States v. Aguilar*, 948 F.2d 392, 397 (7th Cir.1991). The record reflects that the judge, as the trier of fact, had sufficient information to make a discriminating appraisal of the witness' motives and bias. *Kaufmann*, 985 F.2d at 897; *United States ex rel. Ashford v. Dir., Ill. Dept. of Corr.*, 871 F.2d 680, 685 (7th Cir.1989). Ms. Hogue testified, during cross-examination, that she gave Quinn permission to strike her children, and that he hit them on the legs and buttocks with his hand or belt, in her presence. Tr. at 47. However, she also testified that she never saw Quinn mistreating her children. Tr. at 49. Quinn, when permitted to make a record, did not present a relevant connection between the abuse petitions against Ms. Hogue and her testimony in this case. We conclude that Quinn failed to prove a violation of his Sixth Amendment right of confrontation.

B. *Ongoing relationship*

■ The trial court limited cross-examination of Jenny Hogue with respect to her present and continuing relationship with Billy Quinn. The following is the transcription of that record:

BY MR. McINERNEY:

Q Ms. Hogue, do you still consider yourself a friend of Billy Quinn?

MR. VROUSTOURIS: Objection.

THE COURT: Objection sustained.

BY MR. McINERNEY:

Q Well, while Mr. Quinn—strike that, please. You have had another child since this incident, is that correct?

MR. VROUSTOURIS: Objection, irrelevant.

MR. McINERNEY: I think it is motive. I think it is important to place the parties in the proper setting, your Honor. Judge, I would also state that there has been an ongoing relationship, inconsistent with a feeling that Mr. Quinn had murdered her daughter.

THE COURT: What she feels occurred is not the issue. Objection sustained.

Tr. at 45–46. The petitioner has consistently argued that Ms. Hogue's willingness to continue her involvement with Quinn is inconsistent with her feeling that he murdered her daughter. The state appellate court held that the trial court correctly sustained the State's objection to this question, since Ms. Hogue's feelings on this subject were not relevant to the question whether Quinn committed the crime charged. The district court below reiterated that position, and found no abuse of discretion.

In the case at bar, defense counsel was allowed to elicit testimony from Ms. Hogue concerning her relationship with Quinn. She testified that Quinn had been her boyfriend since about December 1984, that he had watched her children for years, and that the children liked him. Tr. at 42–45. We believe that the court, as the trier of fact, had sufficient information about their relationship to make a discriminating appraisal of Ms. Hogue's possible bias. *See People v. Edwards*, 218 Ill.App.3d 184, 160 Ill.Dec. 679, 685–86, 577 N.E.2d 1250, 1256–57 (Ill.App. 1991). When the trial court curtails cross-examination on one peripheral issue, we find no abuse of its discretionary evidentiary ruling. *See United States v. Saunders*, 973 F.2d 1354, 1358–59 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993). Moreover, there was an insufficient connection between Ms. Hogue's feelings about Quinn and the offense charged to satisfy the standards of relevance. We uphold the district court's determination that Quinn was not denied his Sixth Amendment right of cross-examination with regard to the continuing relationship between the petitioner and the witness.

## IV. CONCLUSION

To show a constitutional violation of the Confrontation Clause, a defendant must demonstrate that he was "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Van Arsdall*, 475 U.S. at 680, 106 S.Ct. at 1436. Petitioner Quinn has not succeeded in his proof. Our *de novo* review of the record herein leads us to conclude that the trial court provided the defendant sufficient opportunity for cross-examination of Jenny Hogue and then imposed reasonable limits on that cross-examination after considering the relevance of the abuse petitions and of her ongoing relationship with Quinn. We concur with the district court's determination that the trial court did not abuse its broad discretion. Moreover, even if the excluded evidence had been fully admitted, there was overwhelming evidence establishing Quinn's guilt of the crime.

Having determined that the restrictions imposed on cross-examination did not amount to constitutional error, we need not conduct an analysis under the harmless error doctrine. The district court's denial of Quinn's petition for writ of habeas corpus is AFFIRMED.